**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Steven R. LANSING, Defendant–Appellee.**

**No. 02–1779.**

United States Court of Appeals, Second Circuit.

July 28, 2003.

---

Christopher V. Taffe, Assistant United States Attorney, Western District of New York, Rochester, New York (Michael A.

Battle, United States Attorney) for Plaintiff–Appellant.

Michael J. Tallon, Barrett, Greisberger, Dollinger, Fletcher, Peartree & Tallon, Pittsford, New York, for Defendant–Appellee.

PRESENT: CALABRESI, RAGGI, and WESLEY, Circuit Judges.

## SUMMARY ORDER

At issue in this case is whether an amendment to a criminal judgment stating that $12,000 in restitution "shall be in full satisfaction of the debt owed the United States," Amended Judgment at 5, constitutes a "clerical" correction permitted by Fed.R.Crim.P. 36 (2002). For the reasons stated herein, we conclude that it does not.

From 1992 to 1996, Defendant–Appellee Steven R. Lansing, a former Postal Service employee, collected federal workers' compensation benefits as a result of an on-the-job injury sustained in February 1992. On December 20, 1999, Lansing pleaded guilty to Count One of a four-count indictment charging him with fraud in connection with his receipt of benefits. Specifically, Lansing admitted falsely stating on April 22, 1996, on a Department of Labor form that he had not worked in the previous 15 months. See 18 U.S.C. § 1920. Pursuant to a plea agreement with the prosecution, Lansing acknowledged that he had in fact worked in a family landscaping business since 1992.

From 1992 to 1996, Lansing received well over $100,000 in federal compensation benefits. Nevertheless, "the parties agree[d] that the Court shall require restitution in an amount not to exceed $38,500." Plea Agreement at 2.[1] In a pre-sentence

---

1. Despite its mandatory language, this provision was apparently not part of an agreement pursuant to Fed.R.Crim.P. 11(e)(1)(C) (1999).

See id. at ¶ 15 (stating that only agreement to limit term of incarceration to "no more than 6 months .... is governed by Rule

filing with the district court, Lansing urged a restitution order of no higher than $4,000, the amount of his unreported earnings. Lansing submitted that if he had truthfully disclosed these earnings, his benefits would have been reduced only by this amount.

In a thoughtful written decision, the district judge rejected this argument, noting that "Lansing has offered no evidence indicating that he would have been entitled to continue to receive at least some portion of the disability payments" had he reported his earnings to the Department of Labor. Decision and Order, Sept. 14, 2000, at 5. Moreover, the prosecution had "submitted evidence suggesting that if in fact the defendant had been truthful during the disability period, he may not have been entitled to receive any disability payments at all." *Id.* Despite this evidence, however, the district court "decline[d] to impose restitution in an amount equal to the total benefits paid to Lansing." *Id.* Noting the defendant's history of serious mental problems, his responsibility for minor children, and his family's limited resources, the court determined that Lansing "shall pay restitution in the amount of $12,000." *Id.* at 5–6. Neither party asked the court what effect, if any, this restitution order was intended to have on the Department of Labor's ability to pursue the full loss amount in either administrative or civil proceedings.

As a rule, a criminal judgment does not limit a victim's pursuit of damages through alternative proceedings. *See generally Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (explaining that the Double Jeopardy Clause forbids only multiple criminal punishments); *Spencer v. Casavilla,* 44 F.3d 74, 79 (2d Cir.1994) (recognizing availability of civil suits against convicted criminals). Moreover, even where the prosecuting authority and the victim are part of the same sovereignty, the law ordinarily adopts a "strong presumption against application of collateral estoppel based upon sentencing findings." *United States v. United States Currency in the Amount of $119,984.00, More or Less,* 304 F.3d 165, 174 (2d Cir. 2002) (citing *S.E.C. v. Monarch Funding Corp.,* 192 F.3d 295, 306 (2d Cir.1999)). In this case, however, the victim of Lansing's fraud, the Department of Labor, has voluntarily adopted a deferential policy toward restitution judgments in criminal cases:

> If the court order states that the restitution amount will be in full satisfaction of the debt owed the United States (a "Global Settlement"), the Court Order takes precedence over the [Department's] administrative debt collection process. In such cases, if the restitution amount is less than the outstanding debt principal balance, the principal balance must be reduced to the restitution amount set by the court.

Federal (FECA) Procedure Manual, Part 6—Debt Management, Debt Liquidation, Chapter 6.300.19 (September 1994).

The applicability of this policy to Lansing's case became an issue approximately ten months after his judgment of conviction, when the Department of Labor commenced proceedings to hold him accountable for $115,497.01 in overpaid disability benefits.[2] An administrative hearing was

---

11(e)(1)(c)''). The $38,500 figure represented the compensation benefits received by Lansing from June 1995, when postal inspectors began to surveil his activities, to December 1996, when Lansing's home was searched.

**2.** In subsequently moving for relief pursuant to Rule 36, Lansing advised the district court that this amount reflected all compensation benefits received by him, a statement that comports with ¶ 38 of the unchallenged Presentence Report. We note, however, that in a

conducted at which Lansing's criminal counsel argued that the Department was bound by the prosecution's plea agreement that "no more than $38,000" of the benefits received "should be returned to the government." Decision of Hearing Representative, June 18, 2002, at 3. The hearing officer disagreed. Citing the above-quoted Department policy, he observed that the judgment of conviction did not indicate that the restitution awarded "was meant to be in full satisfaction of the debt owed to the United States, i.e., that it was meant to constitute a global settlement." Rather, it indicated only that Lansing "[would] pay restitution in the amount of $12,000.00." *Id.* at 4–5. Accordingly, the officer affirmed Lansing's $115,497.01 indebtedness.

This ruling prompted Lansing's counsel to move in the district court for amendment of the initial judgment of conviction to include the critical language required by the Department's policy, i.e., that the $12,000 serves as "full satisfaction of the debt owed to the United States (a Global Settlement)." Notice of Motion Pursuant to Rule 36, Aug. 30, 2002. Over prosecution opposition, the district court granted the motion. The court emphasized that it was aware at the initial sentencing that the government's total loss from Lansing's fraud exceeded $115,000 and reiterated its deliberate decision to limit restitution to $12,000. Although acknowledging that the initial judgment did not clearly state that this lesser amount "was to be in full satisfaction of the debt owed by defendant to

the Government," the court ruled that this intent was clearly expressed in its September 14, 2000 order and in its comments at sentencing and that amending the judgment pursuant to Rule 36 was therefore proper. Decision and Order, Nov. 26, 2002, at 4–5.

At the time of the district court's decision, Fed.R.Crim.P. 36 stated: "Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as a court orders."[3] As our court has made plain, the rule authorizes the correction only of errors that are truly clerical, i.e., "minor, uncontroversial errors," such as errors "of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature." *United States v. Werber*, 51 F.3d 342, 347 (2d Cir.1995). It does not permit a court to amend a judgment "to effectuate its unexpressed intentions at the time of sentencing." *Id.* at 343. Indeed, in *Werber*, we concluded that Rule 36 correction was not permissible even where the record gave some indication of the district court's intent if "it is clear that the court took no action to effectuate any such intent." *Id.* at 347.

In this case, the amendment sought by Lansing and granted by the district court involved more than a technical revision of the original judgment; it required a substantive (and controverted) modification in-

decision rendered after the administrative hearing, the Department of Labor hearing representative identifies this figure as the amount of benefits received by Lansing in "the period of May 2, 1992 to February 12, 1994," i.e., a period well before any charge in the indictment. Decision of Hearing Representative, June 18, 2002, at 3. Because the discrepancy was not raised before the district court in connection with the Rule 36 motion and is not argued to us on appeal, we assume

the correctness of the district court's reliance on the Pre-sentence Report.

3. On December 1, 2002, stylistic amendments were made to the rule so that it now reads: "After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission."

tended to limit subsequent proceedings by the agency victim of defendant's fraud. Such an amendment cannot be deemed "clerical." Further, the original sentencing minutes do not evidence the district court's intent to trigger the Department of Labor's deferential policy. Such intent could not be implemented without a specific directive to a court clerk to include the necessary language in the judgment. In this case the record not only fails to indicate such a directive; it reveals no discussion whatsoever between the court and counsel about the Department's policy toward restitution judgments. Under these circumstances, any intentions the district court may have had with respect to the Department's policy were plainly "unexpressed," and Rule 36 could not be employed to modify the original judgment to effectuate them. *See United States v. Werber,* 51 F.3d at 343; *accord United States v. Thomas,* 135 F.3d 873, 875 (2d Cir.1998).[4]

Although we are obliged to vacate the amended judgment, we note that nothing in Rule 36 precluded or now precludes the district court from sharing with the parties on the record its considered view of a just "global" disposition of the restitution issue. The Department of Labor's deferential policy toward restitution judgments evidences its respect for the considered judgment of sentencing courts. In Lansing's case, the parties' failure to alert the district court to this policy in advance of sentencing may have deprived the Department, at the time of its administrative hearing, of the views of one of the circuit's most experienced district judges. Nothing in this order should be understood to prevent the Department from taking advan-

tage of those views in its subsequent review of Lansing's indebtedness.

The amended judgment of conviction dated December 12, 2002 is hereby VACATED and the case REMANDED for reinstatement of the judgment dated September 14, 2000.

---

4. Further supporting the conclusion that the district court's intent with respect to the subsequent administrative proceedings was unexpressed is the fact that Lansing argued to the Department of Labor that it could not recover more than $38,500 from him. This limitation derived from the parties' plea agreement, not from the court's $12,000 restitution judgment.